CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 26 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RONALD D. AREHART, <br> Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:09-cv-00308 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| KEEFE COMMISSARY NETWORK <br> SALES, <br> Defendant. | ) <br> ) <br> ) <br> ) | By: Hon. James C. Turk <br> Senior United States District Judge |

Ronald D. Arehart, a Virginia inmate proceeding pro se, filed a civil rights action, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names Keefe Commissary Network Sales ("Keefe") as the sole defendant and alleges that Keefe price gouges inmates for tobacco products. This matter is before the court for screening, pursuant to 28 U.S.C. § 1915(e)(2).[1] After reviewing plaintiff's submissions, the court dismisses the complaint as frivolous.

I.

Plaintiff alleges the following facts. The Virginia General Assembly passed a law in 2009 that takes effect in January 2010 which will prohibit smoking in correctional facilities. (Compl. 3.) Keefe is the sole operator of the Virginia correctional facilities' commissaries, which essentially are convenience stores for inmates to buy various items. Keefe raised prices rolling tobacco product prices by more than 100% because it is trying to maximize its profit before the new law takes effect. (Id.) For example, "Midnight Special," "Buglar Packet," and "Kite Packet" rolling tobacco cost $6.65, $1.21, and $1.21 respectively in November 2008 but now cost $25.00, $3.16, and $3.16 per packet. (Id.) Plaintiff complains that Keefe is exploiting

---

[1] Plaintiff submitted documents seeking leave to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915.

inmates because they can only purchase tobacco products from Keefe and inmates are forced to pay these exorbitant prices. Plaintiff concludes that Keefe is violating the Sherman Act and the Clayton Act and wants $5,000 in punitive damages because Keefe acted with malice.

II.

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief can be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Although the court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), the court does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon, 574 F.2d at 1151 (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). However, Keefe is a private corporation not covered by § 1983. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" (quoting

2

Blum v. Yaretsky, 457 U.S. 991, 1002 (1982))). Plaintiff did not establish how Keefe qualifies as a "person" under the public function exception. See Holly v. Scott, 434 F.3d 287, 293-94 (4th Cir. 2006); Mentavlos v. Anderson, 249 F.3d 301, 313 (4th Cir. 2001). Therefore, the court considers the complaint frivolous because the plaintiff seeks to impose § 1983 liability on a corporation.

Furthermore, the complaint is still frivolous even if plaintiff could qualify Keefe as a person under the public function exception. The Eighth Amendment protects inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and a defendant prison official subjectively acted with deliberate indifference regarding the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993), or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, Helling v. McKinney, 509 U.S. 25, 31 (1993).

However, an inmate is not entitled to relief simply because of uncomfortable, restrictive, or inconvenient conditions of confinement because "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (regarding due process and describing atypical and significant hardships in relation to the
3

ordinary incidents of prison life); Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). No federal constitutional provision requires jails to provide inmates with a commissary to purchase food items at any price. See Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop. . . ."). Once a correctional facility voluntarily decides to set up a commissary for inmates, the Constitution does not require the jail to offer its commissary items for sale at or near cost. French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980); Trujillo v. Young, No. 7:02-cv-01083, 2003 U.S. Dist. LEXIS 27756, 2003 WL 23312781 at *3 (W.D. Va. June 5, 2003) (holding that inmate has no protected right to purchase commissary items at low prices); Hopkins v. Keefe Commissary Network Sales, No. 07-745, 2007 U.S. Dist. LEXIS 50961, 2007 WL 2080480 at *5 (W.D. Pa. July 12, 2007) (holding no right to restrain commissary from charging even exorbitant prices); Pepper v. Carroll, 423 F. Supp.2d 442, 449 (D. Del. 2006) (holding that inmate has no constitutionally protected right to purchase commissary items as cheaply as possible); Rodriguez v. Swanson Serv. Corp., No. 01-117-P-C, 2001 U.S. Dist. LEXIS 6328, 2001 WL 506871 at * 1 (D. Me. May 11, 2001) (holding commissary pricing does not implicate constitutional concerns).

Plaintiff complains about having to pay higher prices than the public for rolling tobacco products just because he is a prisoner. However, a prisoner's inability to shop different vendors for the best prices on tobacco products is merely a typical and predictable restriction of prison

4

life. Furthermore, plaintiff's complaint does not implicate any constitutional right. Therefore, the court finds that plaintiff's complaint asserts an indisputably meritless legal theory and claims an infringement of a legal interest which clearly does not exist. Accordingly, the court dismisses the complaint as frivolous.

III.

For the foregoing reasons, the court grants plaintiff's motion to proceed in forma pauperis, dismisses the complaint as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and strikes the case from the active docket.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

**ENTER**: This 26th day of August, 2009.

Senior United States District Judge